UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JEAN FAINBRUN,

             Plaintiff,

        -against-                            **MEMORANDUM AND ORDER**
                                                            05-CV-4364 (DLI) (VVP)

SOUTHWEST CREDIT SYSTEMS, L.P.,

             Defendant.
----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Jean Fainbrun ("Plaintiff"), an individual consumer and alleged debtor, brings this action under the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, against Southwest Credit Systems, L.P. ("Defendant" or "Southwest"), a debt collection agency located in Texas. Plaintiff alleges that Defendant violated 15 U.S.C. § 1692(e), which prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt."

Presently before the court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment, both brought pursuant to FED. R. CIV. P. 56. Also before the court is Plaintiff's separate motion for class certification pursuant to FED. R. CIV. P. 23.

For the reasons set forth below, summary judgment is granted in favor of Plaintiff. Defendant's summary judgment request is denied. Furthermore, Plaintiff's motion for class certification is granted, as described below.

**I.    Background**

The facts in this case are few. At some point prior to the events central to this action, Plaintiff apparently defaulted on an account she held with T-Mobile. T-Mobile referred Plaintiff's

account to Southwest for collection on or about February 11, 2005. On March 16, 2005, Southwest issued a debt collection letter to Plaintiff (the "Letter"). The Letter states, in pertinent part,

> Our records indicate that this debt remains unpaid. This shall serve as notification that unless you contact this office immediately to establish arrangements for payment, we will be required to proceed with collection efforts on your account. We have previously informed you that Southwest Credit has the right to report information regarding your account to all major credit reporting agencies. Late payments, missed payments, or other defaults may be reflected on your credit report.

Defendant confirms that 20,000 people received the same form letter between September 14, 2004 and September 14, 2005. (*See* Def.'s Resp. to Pl.'s 1st Req. for Interrogatories ¶ 4.)

Plaintiff contends that the statement "Late payments, missed payments, or other defaults may be reflected on your credit report" is false and violates 15 U.S.C. § 1692(e). Defendant does not dispute that late or missed payments or other defaults are not reported to credit bureaus after the initial reporting of a defaulted account.[1] (*See* Pl.'s 56.1 ¶ 7; Hurt Dep. 8:10-10:19.) Instead, Defendant asserts in its defense that Plaintiff's account was reported to Equifax, Experian, and TransUnion on April 1, 2005, and subsequent updates were submitted on April 25, 2005, May 26,

---

[1] As Defendant did not submit a response to Plaintiff's 56.1 Statement, Plaintiff's assertion of facts in her 56.1 Statement is deemed admitted. *See* Local Rule 56.1(c). In any event, Plaintiff's deposition of Jeff Hurt, Chief Executive Officer of Southwest, confirms Plaintiff's version of the facts:

> Q: Let [*sic*] say if a debtor is late on a payment[,] will the credit report reflect that the debtor was late on a payment?
> A: No, we don't have the ability. We are not the original creditor.
> Q: That would be the same for missed payments[;] they would also not be reported?
> A: Yes . . . .
> Q: After the debt is initially reported to the credit bureaus[,] is there some type of indication of failure to pay that is reported to the credit bureaus after it is initially reported to the credit bureaus?
> A: Yes. . . . We update the bureau[,] and it updates the balance. If there was a change in balance[,] it would be reflected on the new update.

(Hurt Dep. 8:10-17; 10:8-17.)

2005, June 17, 2005, and July 11, 2005. (Hurt Aff. ¶ 6.) According to Defendant, this "continuous act of reporting plaintiff's debt, on a monthly basis to the credit reporting agencies[,] show that the defendant was diligent in reporting all activity on plaintiff's account." (Def.'s Mem. 10.) Defendant thus contends that nothing in its Letter violates 15 U.S.C. § 1692(e).

Plaintiff now seeks summary judgment in its favor. In response, Defendant has filed a cross-motion for summary judgment. Plaintiff, furthermore, seeks class certification.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. - - -, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 1776.

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the nonmoving party may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998), and must affirmatively "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is

3

so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.,* 22 F.3d 1219, 1224 (2d Cir. 1994) (citation omitted).

### B. Summary Judgment Motion and Cross-Motion

Under the FDCPA, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e sets forth a non-exhaustive list of forbidden practices, including the following: "(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."[2] 15 U.S.C. § 1692e. The Second Circuit has held that "[a] single violation of § 1692e is sufficient to establish civil liability under the FDCPA. *Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993) (quoting 15 U.S.C. § 1692k as establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter"). In this circuit, courts must use a "least sophisticated consumer" standard to determine whether a debt collection letter complies with the FDCPA. *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005). Even under this standard, however, any proposed interpretation of a debt collection letter must be reasonable. *Id.* (stating that "even the least sophisticated consumer can be

---

[2]Section 1692e further prohibits the act of "(8) [c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Plaintiff also argues that Defendant's conduct violated section 1692e(8), in addition to subsections (5) and (10). However, this court does not find any violation of section 1692e(8). Although Plaintiff alleges that Defendant falsely communicated to Plaintiff that it would report certain information to credit bureaus, Plaintiff does not allege that any of the information to be reported to credit bureaus was false.

presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care") (citation omitted).

Recently, United States District Judge Brian M. Cogan of this district considered a case involving facts virtually identical to those in the case currently before this court.³ *See Harrison v. Palisades Collections, LLC*, 06-cv-3239 (BMC). In *Harrison*, the relevant language the defendant used in its debt collection letter was: "When permitted by law, we may report information about your account to credit bureaus. Consequently, late payments, missed payments or other defaults on your account may be reflected in your credit report." (*See Harrison* Oral Arg. Tr. 10:24-11:2, May 7, 2007.) Judge Cogan analyzed these two sentences as follows:

> [T]he combination of the two sentences strongly suggests that the consumer is being told that bad things are going to happen as a result of the nonpayment of this debt. As we know from the undisputed facts that bad things are not going to happen, the only thing that can happen between Palisades and this consumer, vis-a-vis the credit reporting agencies, is that things get better for the consumer. So, the purpose of this language is an inducement. It's to get the debtor to pay by suggesting that negative consequences will occur if the consumer does not.

(*See Harrison* Oral Arg. Tr. 13:2-12.) Thus, Judge Cogan held that the language in question violated section 1692(e)(10) and, accordingly, granted the plaintiff's motion for summary judgment. (*See Harrison* Oral Arg. Tr. 13:14-17.)

This court concurs with Judge Cogan's analysis and holding. In the instant case, Defendant's Letter contained the following language:

> This shall serve as notification that unless you contact this office immediately to establish arrangements for payment, we will be required to proceed with collection efforts on your

---

³Defendant attempts to distinguish *Harrison* by stating that, in that case, "it does not appear that reporting of the debt was as regular or as systematic as it was in this case." (Def.'s Letter, May 22, 2007.) However, as evident in the discussion that follows, the regularity or frequency of reporting is irrelevant to this court's analysis. Rather, the chief concern is the *content* of the reports.

> account. We have previously informed you that Southwest Credit has the right to report information regarding your account to all major credit reporting agencies. Late payments, missed payments, or other defaults may be reflected on your credit report.

There appears to be no dispute that the initial reporting of Plaintiff's defaulted status to credit bureaus took place prior to the issuance of the Letter. After the initial reporting, Defendant, by its own words, did not–could not, in fact–report late or missed payments or other defaults to credit reporting agencies. (*See* Hurt Dep. 8:10-17.) However, Defendant claims that the above-quoted language does not violate the FDCPA because Defendant reported "plaintiff's debt" to credit bureaus on a continuous basis. (*See* Def.'s Mem. 10.) By that, Defendant apparently means that, as a general matter, it regularly reports to credit reporting agencies the then-current balance on an account. (*See* Hurt Dep. 10:15-17.) Thus, if a debtor were to make a payment, the lower balance would be updated on the account, whereas if no payment were made, correspondingly, the balance would simply remain unchanged. (*See* Hurt Dep. 10:16-19.) This practice does not amount to reporting "[l]ate payments, missed payments, or other defaults," as stated in the Letter, regardless of whether one applies the "least sophisticated consumer" standard or a higher standard.[4]

Furthermore, it is entirely plausible, based on the context of the challenged sentence, that the "least sophisticated consumer" could construe the sentence as a "threat to take any action . . . that is not intended to be taken" and a "false representation or deceptive means to collect or attempt to

---

[4]In *Harrison*, Judge Cogan stated that it was unclear whether the sentence "Consequently, late payments, missed payments or other defaults on your account may be reflected in your credit report" referred to "current events or future events in terms of missed payments." (*See Harrison* Oral Arg. Tr. 12:19-24.) He surmised that "[i]t may and in fact probably does simply refer to historical events, payments that have already been missed or are late." (*See Harrison* Oral Arg. Tr. 12:24-13:1.) This court does not subscribe to Judge Cogan's view here, at least on the facts of the instant case. The context of the sentence in question here makes clear to this court that Defendant was not referring to historical events but rather to potential future events.

collect any debt" under sections (5) and (10) of 15 U.S.C. § 1692e. As Judge Cogan reasoned, the "least sophisticated consumer" may understand the sentence as implying that additional negative reporting to credit bureaus will result if the consumer continues his or her failure to pay. Because Defendant clearly had no intention or ability to report late or missed payments or any additional defaults to credit bureaus, regardless of whether Defendant paid any or all of the amount demanded, the challenged sentence constitutes a threat and false representation violative of 15 U.S.C. § 1692e(5) and (10).

The court thus grants summary judgment for Plaintiff and denies Defendant's request for summary judgment.

### C. Motion for Class Certification

Plaintiff bears the burden of proof with respect to a motion for class certification. *See In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006). To satisfy its burden, Plaintiff must first show that the four criteria of FED. R. CIV. P. 23(a) are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). Once the Rule 23(a) criteria are established, Plaintiff must then demonstrate that certification is warranted in at least one of the Rule 23(b) categories. *Amchem Prods.*, 521 U.S. at 614. In the present case, Plaintiff seeks certification under Rule 23(b)(3), which permits class certification "if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

Finally, Rule 23 further "contains an implicit requirement that the proposed class be precise, objective and presently ascertainable." *Burley v. City of N.Y.*, 03 Civ.735(WHP), 2005 WL 668789, at *8 (S.D.N.Y. Mar. 23, 2005) (internal quotation marks and citations omitted).

Defendant does not contest that the four criteria articulated in Rule 23(a) are satisfied, nor that Rule 23(b)(3) is satisfied. Indeed, Southwest has conceded that it sent substantially identical debt collection letters to approximately 20,000 individuals between September 14, 2004 and September 14, 2005. Thus, the numerosity requirement is easily satisfied. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (stating that "numerosity is presumed at a level of 40 members"). In addition, the same facts and issues of law are implicated for all putative class members, thereby satisfying both the commonality and typicality requirement. *See In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 166-67 (2d Cir. 1987) (stating that the commonality requirement will be met if the named plaintiffs share a common question of law or fact with the grievances of the prospective class); *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir. 1993) (stating that the typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.") Furthermore, Defendant has raised no issues concerning the adequacy of Plaintiff as class representative, whether by challenging the qualifications of Plaintiff's counsel or by raising any conflict of interest between Plaintiff and prospective class members. *See Marisol A. v. Giuliani,* 126 F.3d 372, 378 (2d Cir. 1997) (stating that the adequacy of representation requirement entails two factors: (1) class counsel must be qualified, experienced and generally able to conduct the litigation; and (2) the interests of the named plaintiffs cannot be antagonistic to those of the remainder of the class). Finally, because there are no individualized issues of fact or law, the predominance requirement under Rule 23(b)(3) is met. It is further clear that "a class action is

superior to other available methods for the fair and efficient adjudication of the controversy," particularly given the potentially large number of class members involved. *See* FED. R. CIV. P. 23(b)(3). Thus, both Rules 23(a) and 23(b)(3) are satisfied.

The only challenge Defendant raises in opposition to Plaintiff's motion for class certification is to question whether Plaintiff has adequately defined the class. Defendant offers its sole challenge through two stray sentences in its brief, unaccompanied by any legal support or analysis: "Finally, plaintiff has failed to sufficiently define the class he proposes to represents [*sic*], as required by Federal Rule of Civil Procedure 23. Therefore, his claim for class certification must be denied." (Def.'s Mem 4.)

In determining whether a class is sufficiently definite to warrant class certification, "[t]he key question is whether plaintiffs can demonstrate that members of their proposed class are identifiable when utilizing objective standards." *Hnot v. Willis Group Holdings Ltd.*, 228 F.R.D. 476, 481 n.2 (S.D.N.Y. 2005) (citation omitted); *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ.4911 HB, 2003 WL 21659373, at *2 (S.D.N.Y. Jul. 15, 2003) ("Membership should not be based on subjective determinations, such as the subjective state of mind of a prospective class member, but rather on objective criteria that are administratively feasible for the Court to rely on to determine whether a particular individual is a member of the class.") In addition, the court must be able to determine whether a class is sufficiently definite "without having to answer numerous fact-intensive inquiries." *Fears*, 2003 WL 21659373, at *2 (citation omitted). Class members "need not be ascertained before the class certification," though they "must be ascertainable at some point in the case." *Id.* (citation omitted).

The court finds that, subject to the modifications listed below, Plaintiff has sufficiently defined the proposed class. Plaintiff's class definition is as follows:

9

> The Class consists of all persons whom Defendant's records reflect resided in the United States, and who were sent a collection letter (a) bearing the defendant's letterhead in substantially the same form as the letter sent to the plaintiff on or about March 16, 2005[;] (b) the collection letter was sent to a consumer seeking payment of an alleged debt; and (c) the collection letter was not returned by the postal service as undelivered[;] (d) and that the letter contained violations of 15 U.S.C. §§ 1692e(5), 1692e(8), 1692e(10).

Defendant need only examine its records to identify the individuals who received identical or materially identical debt collection letters to that sent to Plaintiff. There is no ambiguity regarding who these individuals may be, nor any need for a factual inquiry beyond a search of Defendant's records. Thus Plaintiff has sufficiently defined the proposed class, and its motion for class certification is granted. However, in accordance with the court's summary judgment discussion above, the court refines the definition as follows:

> The Class consists of all persons who, according to the defendant's records, (1) while residing in the United States, (2) were sent a collection letter (a) bearing the defendant's letterhead in substantially the same form as the letter sent to the plaintiff on or about March 16, 2005 and (b) seeking payment of an alleged debt; and (3) whose collection letter was not returned by the postal service as undelivered and, further, (4) whose collection letter contained the following language, or substantially similar language, in violation of 15 U.S.C. §§ 1692e(5) or (10):
>
>> This shall serve as notification that unless you contact this office immediately to establish arrangements for payment, we will be required to proceed with collection efforts on your account. We have previously informed you that Southwest Credit has the right to report information regarding your account to all major credit reporting agencies. Late payments, missed payments, or other defaults may be reflected on your credit report.

**III.	Conclusion**

For all of the foregoing reasons, Plaintiff's request for summary judgment is granted. Accordingly, Defendant's request for summary judgment is denied. In addition, Plaintiff's motion for class certification is granted. The court certifies the proposed class pursuant to Rule 23(b)(3), and the class is defined as set forth above.


SO ORDERED.

DATED:	Brooklyn, New York
	September 25, 2007

	_____/s/_____
	DORA L. IRIZARRY
	United States District Judge